### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | |
|---|---|
| In re: | |
| **GEMCRAFT HOMES, INC., et al.**[1] | **(CHAPTER 11)** |
| **Debtors.** | **CASE NO. 09-31696 (NVA)** |
| | **(Joint Administration Requested)** |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 105, 362, AND 364 OF THE BANKRUPTCY CODE AND RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (A) AUTHORIZING AND APPROVING POSTPETITION FINANCING FROM REGIONS BANK AND GRANTING SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (B) MODIFYING THE AUTOMATIC STAY PURSUANT TO SECTION 362; AND (C) SCHEDULING INTERIM AND FINAL HEARINGS PURSUANT TO BANKRUPTCY RULE 4001**

The Debtors, by their undersigned proposed counsel, hereby move this Court for entry of an Order pursuant to sections 105, 362, and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), granting the following relief:  (I) authorizing the Debtors to enter into a debtor-in-possession credit facility with Regions Bank ("Regions"), substantially in the form annexed hereto as **Exhibit "A"** (as amended, modified and in effect from time to time, and together with any and all related documents and agreements entered into in connection with or related to the debtor in possession credit facility, the "Regions DIP Credit

---

[1]  The Debtors in these chapter 11 bankruptcy cases are (i) Gemcraft Homes, Inc., (ii) DLM, LLC, (iii) Gemcraft Homes Group, Inc., (iv) Gemcraft Homes Forest Hill, LLC, (v) Gemcraft Chesapeake, LLC, (vi) Harkins Property, LLC, (vii) The Preserves at Jefferson Creek, LLC, and (viii) S & M Properties, LLC (collectively, the "Debtors").

Agreement");[2] (II) authorizing the granting of liens on postpetition collateral and superpriority

claims to Regions; (III) modifying the automatic stay; and (IV) setting an interim hearing and a

final hearing (the "Final Hearing") on this Motion.  In support of this Motion, the Debtors rely

upon and incorporate by reference the Affidavit of William R. Luther, Jr. in Support of First-Day

Motions (the "Luther Affidavit"), which was filed with the Court contemporaneously with this

Motion.  In further support of this Motion, the Debtors respectfully represent as follows:

## INTRODUCTION

1.      The Debtors anticipate having in place, shortly after the Petition Date and subject

to the Court's approval, three separate postpetition credit facilities, in the aggregate amount of

$ 37,000,000, to provide financing for their ongoing operations, summarized as follows:

(a)      a debtor in possession credit facility with Regions Bank in the maximum
amount of $25,000,000.00;

(b)      a debtor in possession credit facility with M&T Bank in the amount of
$7,000,000.00;

(c)      an unsecured debtor in possession credit facility with Gemcraft Capital,
LLC, an affiliate of the Debtors, up to a maximum amount of
$5,000,000.00.

Together, these three facilities will provide the funding necessary for the Debtors to pursue what

they believe should be a successful reorganization.

2.      By this Motion, the Debtors seek approval to enter into the Regions DIP Credit

Agreement with Regions, one of their key prepetition lenders, to provide postpetition financing

on the terms and conditions set forth in the Regions DIP Credit Agreement.  The Debtors require

immediate access to the liquidity provided by the Regions DIP Credit Agreement, to permit,

---

[2]      All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Regions
DIP Credit Agreement.

among other things, (a) the orderly operation of the Debtors' homebuilding businesses, (b) the

management and preservation of the Debtors' assets within developments financed by Regions,

(c) the maintenance of the Debtors' business relationships with customers, subcontractors,

vendors and contract parties, (d) the payment of payroll and other employee obligations, (e) the

satisfaction of other working capital and operational needs, and (f) the preservation of the

Debtors' estates.  Without immediate access to postpetition financing, the Debtors lack the

ability to maintain and continue their business operations and the value of their estates will be

irreparably harmed.

3.      Accordingly, the Debtors have moved for approval of the Regions DIP Credit

Agreement on an interim basis subject to a final hearing.

**JURISDICTION & VENUE**

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O).

5.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

A.   **Overview of the Debtors' Businesses**

6.      Gemcraft Homes, Inc. ("Gemcraft") is a corporation formed under the laws of the

State of Maryland with its principal place of business located in Harford County, Maryland.

Gemcraft was founded in 1993 with a single sales trailer in Abingdon, Maryland, from which six

residential homes were sold.  Since that time, Gemcraft has grown to become one of the largest

independent homebuilders in the Mid-Atlantic region, and one of the fastest growing builders in

the entire country.  Gemcraft is a production builder which targets first-time homebuyers and

3

first-time "move up" buyers.  It also targets retired, and soon to retire, buyers for its retirement communities.

7.    Gemcraft was named the Maryland Builder of the Year by the Maryland Homebuilders' Association in 2001.  In 2007, Gemcraft was the recipient of three Parade of Homes awards for Best Home and Best Bath & Kitchen, and two Pyramid awards for Best Single Family Home and Best Multi-Family Home.  Gemcraft followed that success in 2008 by winning four more Parade of Homes awards, including awards for Best Bath and Best Kitchen. Builder Magazine's May 2009 issue recognized Gemcraft as the 61st largest builder in the country.  Gemcraft's historical success can be attributed to its dedication to buyer satisfaction, and ability to deliver quality amenities at affordable prices.

8.    As of the Petition Date, Gemcraft has built residential homes in over forty communities spread across five states.

9.    DLM, LLC ("DLM") is an affiliate of Gemcraft, with common ownership, which serves as the land development company for the enterprise.  First organized in 2000 as a Maryland limited liability company known as Forest Hill Land Development, LLC, DLM has grown from managing one development job to one of the largest residential developers on the East Coast, controlling over 20,000 lots.  DLM historically focused on raw ground in growth areas that were acquired to be taken through the entire development  process.  DLM produces finished lots ready for the homebuilder to sell, build and deliver to new homebuyers.  DLM has sold lots to Gemcraft and national and local builders including  Lennar, Ryan, and K-Hovnanian.

10.    Prior to 2000, Gemcraft Homes Forest Hill, LLC ("Gemcraft Forest Hill") served as the land acquisition company for the enterprise.  Gemcraft Forest Hill currently holds land that was acquired (or contracted to be acquired) prior to DLM's formation.

4

11.     Gemcraft Homes Group, Inc. ("GHG") maintains systems that allow Gemcraft's homebuilding divisions to sell homes.  GHG also maintains the payroll account to pay Gemcraft's employees (except employees in West Virginia).

12.     Harkins Property, LLC, which is wholly owned by Gemcraft Forest Hill, owns several land development projects in Delaware and Pennsylvania.  Gemcraft Chesapeake, LLC and The Preserves at Jefferson Creek, LLC each purchase and sell finished lots in separate condominium projects located in Delaware.

13.     S & M Properties, LLC is an affiliate of Gemcraft, which owns finished lots in a community in Abington, Maryland known as Autumn Run.

**B.     Growth of the Debtors' Businesses**

14.     From 1995 through 1998, Gemcraft grew from a homebuilder with two model homes and 21 sales in Baltimore, Harford and Cecil Counties, to a builder with active construction in twelve communities containing eight model homes, and sales in excess of 200 hundred homes per year.  The company's growth and evolution to become the large regional builder it is today accelerated in 1998 when Gemcraft purchased the assets of Keystone Homes and entered the townhouse market.  By 1999, sales soared to over 340 homes, and Gemcraft expanded into the Delaware market.  In 2002, Gemcraft expanded into Pennsylvania and the Eastern Shore of Maryland, selling 682 homes with total sales in excess of $128 million. Gemcraft's sales peaked in 2005 with 918 sales totaling over $300 million in five states, including Maryland, Delaware, Pennsylvania, West Virginia and Virginia.  Gemcraft maintained over 400 employees at the height of its success.

45674/0002-6062119v12

C. **Prepetition Capital Structure**

15.     The Debtors' growth has been very dependent on loans from banks to finance the acquisition of land as well as the construction of homes.  In 2005, the Debtors relied on approximately 24 different lenders, including Regions, M&T Bank ("M&T"),  PNC Bank, BB&T Bank, Wachovia Bank, and Columbia Bank (collectively, with all of the Debtors' other lenders, the "Lenders"), and they had the ability to borrow up to $400 million in the aggregate. The overwhelming majority of the Debtors' loans were guaranteed by the owners of Gemcraft.

16.     As of November 1, 2009, Gemcraft and other Debtors (except for DLM) owe their Lenders a total of approximately $99,000,000 under the various loan agreements, DLM owed its Lenders a total of approximately $32,000,000, and other affiliated non-Debtors owe approximately $32,0000,000.

D. **Regions' Prepetition Loans to the Debtors**

17.     On June 9, 2005, Gemcraft Homes Group, Inc. entered into a loan agreement with Regions for $40,000,000 which was structured to finance the take-down of finished lots, and the construction of houses under contract as well as model homes (the "Prepetition Loan").  The lots and houses were located in various developments, and the acquisition loans for the developments were financed through other lenders.

18.     The Prepetition Loan was modified a number of times from 2005 to the Petition Date.  In February, 2006, the Prepetition Loan amount was increased to $75,000,000. Four other modifications in 2006 helped finance the acquisition of raw land and the development of the land into finished lots.  Each time a development was approved for acquisition, the entity which owned the development was added as a guarantor of the loan.

45674/0002-6062119v12

19.     On February 17, 2006, June 1, 2006, June 15, 2006 and August 29, 2006, additional acquisition and development loans were approved to finance additional development projects.

20.     The final modification, the Twelfth Modification Agreement, was executed on August 31, 2009.  As of the Petition Date, the Debtors owed Regions a total of approximately $32.2 million under all of the prepetition Regions' loans.

**E.    Events Leading to Bankruptcy**

21.     As is now well documented, after the U.S. housing market peaked in 2005, the market collapsed at the end of 2006.  Home foreclosures skyrocketed in 2006-2007, further contributing to the crisis in the subprime, mortgage, and credit markets.  The downturn worsened in 2008.

22.     Homebuilders all over the country suffered major losses.  A number of them filed for relief in bankruptcy, and many others ceased operating and closed their doors.

23.     According to the National Association of Homebuilders (the "NAH"), single-family home starts fell by 3.3% in October 2008 to a level that was down by 71% from its peak in January 2006.  The NAH also reported that sales of new homes continued to trend downward falling by 40% on a year-over-year basis.  New-home sales were down by 69% in 2008 from their cyclical peak in July 2005.  On December 30, 2008, the Case-Shiller home price index reported its largest price drop in its history.

24.     The Debtors were not immune to these adverse market forces.  Beginning in 2006, as home values declined, interest rates rose, and defaults on home loans increased dramatically, Gemcraft's annual home sales decreased from 770 in 2006, to 501 in 2008.  Gemcraft's gross profits on home sales decreased concurrently from the high 20% range to the

single digits.  The value of DLM's land holdings plummeted, in the Debtors' estimate, by hundreds of millions of dollars.  With decreasing sales and profitability, Gemcraft's ability to meet its obligations to its subcontractors suffered, and its Lenders continued to demand interest and paydowns on outstanding loans.

25.    To address their liquidity crisis, the Debtors reduced their staff from over 400 employees to approximately 81 as of the Petition Date, closed six of their seven offices, cut salaries and benefits, and reduced overhead and direct costs.

26.    Gemcraft's reduced sales, projected to be 350 this year, coupled with the decreased value of DLM's land holdings, rendered both Gemcraft and DLM unable to service their debts to their Lenders and remain profitable companies under their current financial structure.  In these circumstances, the Debtors had no choice but to seek relief under chapter 11 of the United States Bankruptcy Code to restructure their business and financial affairs and to continue as going concerns.

## RELIEF REQUESTED WITH RESPECT TO THE DIP CREDIT FACILITY

27.    By this Motion, the Debtors seek entry of interim and final Orders authorizing and/or approving, inter alia:

(a)    Under Bankruptcy Code sections 364(c), (d) and (e), authorizing the Debtors to obtain postpetition financing from Regions (sometimes referred to herein as the "DIP Lender"), consisting of up to $25,000,000 (subject to the Borrowing Base) (the "DIP Credit Facility") under the terms of the DIP Credit Facility with funds thereunder available for use in accordance with the budget set forth in the Regions DIP Credit Agreement;

(b)    Under Bankruptcy Code section 364(c)(1), and subject to the limitations set forth in the DIP Credit Agreement (as defined in the proposed Interim Financing Order, a copy of which is attached hereto), approving the grant of a Superpriority Claim (as defined and set forth in detail in the Interim Financing Order) for the benefit of Regions;

8

(c)     Under Bankruptcy Code sections 364(c)(2), (c)(3) and (d), and as security for the repayment of the borrowings and all other obligations arising under the Regions DIP Credit Agreement, authorizing the Debtors to grant Regions first priority security interests in and liens upon the Post-Petition Collateral;

(d)     Under Bankruptcy Code sections 361, 363(e) and 364(e), authorizing the Debtors to use the Pre-Petition Collateral and to provide certain protections with respect to any diminution in the value of the Pre-Petition Collateral resulting from the implementation of the DIP Credit Facility, the use, sale or lease of the Pre-Petition Collateral or imposition of the automatic stay pursuant to Bankruptcy Code section 362;

(e)     Under Bankruptcy Code sections 363 and 364, authorizing the Debtors to use the proceeds of the DIP Credit Facility for, among other things, payment of the amounts owed to Regions, home construction and lot acquisition, working capital and general corporate purposes, and under Bankruptcy Code section 362, the modification of the automatic stay to the extent set forth in the Regions DIP Credit Agreement and the Financing Orders; and

(f)     Pursuant to Bankruptcy Rule 4001, scheduling the Final Hearing on this Motion and establishing notice procedures in respect of the Final Hearing by this Court to consider entry of a Permanent Financing Order authorizing the Regions DIP Credit Agreement on a final basis.

## BASIS FOR RELIEF

**A.     Immediate Need for Liquidity**

28.     The Debtors have an immediate need to access the DIP Credit Facility and to use the prepetition collateral, to permit the orderly continuation of the operation of the Debtors' businesses and commencement of the restructuring process, as described in the Luther Affidavit. The Debtors require immediate use of the DIP Credit Facility to fund (i) postpetition completion costs for houses the Debtors began constructing prior to the Petition Date in developments financed by Regions Bank, and (ii) new house construction starts, on properties subject to Regions' prepetition liens.  The Debtors' need to borrow under the DIP Credit Facility is both necessary to ensure that the Debtors have sufficient working capital and liquidity to preserve and

9

maintain the going concern value of their businesses and to maximize recoveries for the benefit of its creditors.

29.    In light of the circumstances, the Debtors have engaged in good faith and extensive discussions and arms'-length negotiations with Regions. As a result of these discussions and negotiations, the Debtors have reached an agreement with Regions which will address the Debtors' immediate need for financing.

30.    With the liquidity afforded by the credit facility, the Debtors will be able to stabilize operations, finish the construction of houses in developments financed by Regions, restore critical relationships, complete and deliver homes to the individuals who entered into agreements to purchase homes from the Debtors,  and to retain and pay employees.  As a result, immediate approval of, together with access to the DIP Credit Facility on an interim basis, is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.

**B.    Terms of the Proposed Postpetition Financing**

31.    Consistent with Bankruptcy Rule 4001(c)(1), the significant terms of the Regions DIP Credit Agreement and Interim Financing Order are as follows:[3]

> (a)    Borrower:  Gemcraft Homes Group, Inc.
>
> (b)    Lender:  Regions Bank
>
> (c)    Guarantors:  Gemcraft Homes, Inc., Gemcraft Homes Forest Hill, LLC, Gemcraft Chesapeake, LLC, DLM, LLC, Harkins Property, The Preserve at Jefferson Creek, LLC, Tull Gardens, LLC, St. Helens, LLC, William R. Luther, Jr., Vickie Luther, Sharon Babcock and Brian Fromme.

---

[3]    This summary is qualified in its entirety by reference to the provisions of the Regions DIP Credit Agreement and the Interim Financing Order.

(d)  Commitment: Up to $25,000,000 line of credit comprised of (i) $22,000,000 revolving Builder Line of Credit ("BLOC") (subject to the Borrowing Base and taking into account the balance under the prepetition Borrowing Base Facility of approximately $ 16.2 million) , (ii) $2,000,000 Acquisition &Development Line of Credit ("A&D Line"), and (iii) $1,000,000 revolving overhead line of credit ("Overhead Line"), all subject to the other terms and conditions of the Regions DIP Credit Agreement, and final approval of Regions.

(e)  Use of Proceeds:  To pay for costs, expenses and fees in connection with the (i) completion costs on construction work in progress, new house construction starts, and new lot acquisition and construction starts on properties subject to Regions' prepetition liens, (ii) remaining development expenses at certain projects, and (iii) temporary overhead shortfalls and other proper corporate purposes, subject to other terms and conditions as specifically set forth in the Regions DIP Credit Agreement.

(f)  DIP Facility Fee:  $125,000.00 at closing, plus ½ % of the BLOC and Borrowing Base advances, and Acquisition & Development advances at the closing of a house sale.

(g)  Events of Default:  Among others: (i) failure to comply with any term, condition or provision under the Interim Financing Order; (ii) the occurrence of any condition or event which constitutes any "Event of Default" under the Third Amended and Restated Construction Agreement (the "Loan Agreement") or the Ratification and Modification Agreement (the "Ratification Agreement"); (iii) failure to make payment within ten days after payment is due and payable; (iv) failure to continue construction of any home for a period of fifteen days; lien for performance of work or the supply of materials is created after the Petition Date against any portion of the Land or any improvements thereon

(h)  Interest Rate:  LIBOR + 300bps with a floor of 3.50 %

(i)  Term:  The BLOC and the A&D Line shall mature at the earlier of confirmation or November 9, 1010.  The Overhead Line has a 6 month term.

(j)  Conditions Precedent:  Among others: (i) Gemcraft shall receive a credit facility from Gemcraft Capital, LLC for up to $ 5,000,000.00 on an unsecured, administrative claim basis; (ii) Gemcraft shall furnish to Regions all financial information, projections, budgets, business plans, cash flows and such other information as Regions shall reasonably request from time to time; (iii) receipt of title insurance satisfactory to Regions; and (iv) satisfactory review by counsel for Regions of legal issues attendant to the postpetition financing transactions contemplated.

11

(k)     <u>Lien Priority</u>.  The postpetition liens and security interests of Regions shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an Order of the Court or otherwise, with respect to the properties on which Regions has prepetition liens, provided, however, that Regions' liens on and security interests in the Collateral shall be subject only to the Permitted Lines and Claims, and Regions will not receive a first priority lien or security interest in the collateral of M&T Bank or any other prepetition lender.  To the extent there exists unencumbered assets, Regions will share in such collateral *pari passu* with M&T Bank provided M&T Bank extends postpetition financing to the Debtors on terms acceptable to the Debtors and approved by the Court.

(l)     <u>Superpriority Administrative Expense</u>.  For all Post-Petition Obligations now existing or hereafter arising pursuant to the Interim Financing Order, the Loan Agreement, Ratification Agreement or otherwise, Regions, for the benefit of itself, is granted an allowed superpriority administrative claim pursuant to Section 364(c) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtors whether now in existence or hereafter incurred by Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1), 546(c), 726 or 1114 of the Bankruptcy Code (the "Superpriority Claim"), provided, however, the Superpriority Claim shall share super-priority rights *pari passu* with M&T Bank provided M&T Bank extends postpetition financing to the Debtors, and shall exclude all funds provided by Gemcraft Capital, LLC to the Debtors under its Court-approved postpetition credit facility.

(m)     <u>Equalization of Lenders</u>.  M&T Bank and regions must be treated equally, as far as reasonably possible, given their positions.  If M&T Bank does not provide postpetition financing at filing, but provides such financing thereafter, Regions will have the right to adjust its facility sop that it is treated equally.  A default under the M&T Bank facility shall be a default under the Regions facility.

45674/0002-6062119v12

**BASIS FOR RELIEF**

A.    **The Court Should Authorize the Debtors to Incur Postpetition Debt Secured by a Senior Priority Lien and Grant Regions Superpriority Administrative Priority on an Interim and Final Basis.**

32.    This Court should authorize the Debtors to obtain the DIP Credit Facility, secured by senior priority liens, and should grant the DIP Credit Facility obligations superpriority administrative claim status pursuant to section 364 of the Bankruptcy Code.

33.    Section 364 of the Bankruptcy Code permits debtors to obtain postpetition credit, but provides different requirements depending upon whether the credit is (a) unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, (b) unsecured credit allowable as a super-priority administrative expense, or (c) secured credit with varying lien priorities. 11 U.S.C. § 364. Specifically, pursuant to section 364(c), if a debtor is unable to obtain unsecured credit allowable as an administrative expense, then the Court, after notice and a hearing, may authorize the debtor to obtain credit or incur debt "(1) with priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of this title; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien." 11 U.S.C. § 364(c).

34.    Where a debtor is unable to obtain credit under section 364(c), the debtor may obtain credit secured by a senior or equal lien on the property of the estate that is already subject to a lien (referred to as a "priming lien"), as long as the secured prepetition creditor is provided adequate protection. 11 U.S.C. § 364(d).

35.    Generally, sections 364(c) and (d) of the Bankruptcy Code require debtors to demonstrate that they are unable to obtain unsecured credit allowable under section 503(b)(1) as an administrative expense pursuant to sections 364(a) or (b). See In re Ames Dep't Stores, Inc.,

115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("a debtor is not required to seek credit from every possible source . . . [but only to] show that it has made a reasonable effort to seek other sources of credit available"); see also Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986) (hereafter "Snowshoe") (finding that although there is "no duty to seek credit from every possible lender before concluding that such credit is unavailable," the statute requires a debtor to show "by a good faith effort that credit was not available without the senior lien").

36.    Against this statutory backdrop, courts evaluate the facts and circumstances of a debtor's case, and accord significant weight to the debtor's business judgment regarding the necessity for obtaining the financing.  See, e.g., Snowshoe, 789 F.2d at 1088; Ames, 115 B.R. at 40.  For example, the need for a swift injection of cash to preserve a debtor's business satisfies the requirements of Bankruptcy Code section 364(d) when coupled with unsuccessful attempts to locate alternative financing.  See, e.g., Snowshoe, 789 F.2d at 1088 (primary facts supporting postpetition liens included lack of alternative financing sources and need to obtain prompt cash infusion to preserve value of debtor's business); Ames, 115 B.R. at 40.

37.    With the assistance of their financial advisors, FTI Consulting, Inc., the Debtors analyzed their needs for additional cash in connection with these chapter 11 cases, and determined that they would not be able to continue the businesses and implement their business plan in the long run, without the proposed financing.

38.    Prior to the Petition Date, the Debtors and their respective professionals reviewed the options available to obtain the necessary financing.  Gemcraft Capital, LLC, a non-debtor affiliate of the Debtors, agreed to provide up to $5,000,000 of unsecured postpetition financing. But the unsecured facility by itself will not provide the funds required by the Debtors to continue

14

to operate and build homes for their existing and future customers.  Given that all or substantially all of the Debtors' assets are encumbered by the liens of its prepetition lenders, the Debtors submit that they are unable to obtain the required funds in the form of further unsecured debt allowed under section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to section 364(a) or (b), or debt having the priority afforded by section 364(c)(1), or debt secured as limited by section 364(c)(2) or (3) because of the need to, and the remote chances of, priming the liens of the lenders.  Therefore, the Debtors concluded that the proposed DIP Credit Facility, provided by Regions was the most favorable under the circumstances, and combined with the other anticipated credit facilities, it addresses the Debtors' reasonably foreseeable working capital needs.

39.     Although the Regions DIP Credit Agreement provides that the security interests and administrative expense claims granted to Regions are senior and first priority with respect to Regions' existing collateral, Regions will not receive a senior security interest or lien on the collateral of M&T or any other prepetition lenders, and its superpriority rights shall be *pari passu* with any M&T provided that M&T provides the Debtors with a secured postpetition credit facility acceptable to the Debtors and approved by the Court.

40.     Accordingly, the Debtors' decision to enter into the Regions DIP Credit Agreement represents an exercise of sound business judgment.  Without financing, the Debtors will be unable to resume the completion of homes for individuals who entered into purchase agreements with the Debtors in developments financed by Regions.  The financing under the DIP Credit Facility addresses this need by providing the Debtors with funds necessary to meet ongoing operating needs and by enabling the Debtors to implement their reorganization efforts.

45674/0002-6062119v12

41.     The Debtors and Regions have engaged in good faith and extensive arms'-length negotiations which resulted in the Regions DIP Credit Agreement.  The Debtors negotiated the best financing arrangement they could under the circumstances.  The consequences of failing to approve the Regions DIP Credit Agreement (including long work stoppages on partially constructed houses, loss of jobs and going concern value) would be harmful to the Debtors, their creditors, home purchasers, and other parties in interest.  Without prompt action on this Motion, the Debtors' ability to reorganize will be jeopardized.  Accordingly, approval of the Regions DIP Credit Agreement is in the best interest of the Debtors, creditors and these estates.

**B.      Interim Borrowing Under the Regions DIP Credit Agreement is Appropriate Under the Circumstances and Should Be Approved Subject to the Final Hearing.**

42.     Bankruptcy Rule 4001 provides that "[t]he court may commence a final hearing on a motion for authority to obtain credit no earlier than 15 days after service of the motion." Fed. R. Bankr. P. 4001(c)(2).  Bankruptcy Rule 4001 further provides, however, that "[i]f the motion so requests, the court may conduct a hearing before such 15 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Id.  In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions.  See, e.g., Ames, 115 B.R. at 38.

43.     As stated above,, it is essential that the Debtors immediately obtain the right to borrow funds under the DIP Credit Facility.  In the absence of new financing, the Debtors' prospects for reorganization would be irreparably damaged.  Entry of the Interim Financing Order, on the other hand, will, among other things, allow for the continued flow of payments to subcontractors, employees, and utilities necessary to sustain the operation of the Debtors'

16

businesses and enhance the Debtors' prospects for a successful reorganization. Having a demonstrable source of financing will be essential to preserving the confidence of, and retaining, home buyers, subcontractors, suppliers, and employees.

44.     Accordingly, this Court's interim approval of the Regions DIP Credit Agreement is necessary to avoid immediate and irreparable harm to the Debtors' estates and therefore is appropriate under the circumstances pursuant to Bankruptcy Rule 4001.

**C.      This Court Should Modify the Automatic Stay to Permit Actions Authorized or Permitted by the Regions DIP Credit Agreement, the <u>Interim Financing Order, and the Final Order.</u>**

45.     The Regions DIP Credit Agreement and the Interim Financing Order contemplate a modification of the automatic stay established pursuant to section 362 of the Bankruptcy Code to permit Regions, to the extent necessary, to perform any act authorized or permitted by the Regions DIP Credit Agreement and the Interim and Final Orders, including, without limitation: (a) to implement the postpetition financing arrangements pursuant to the Interim and Final Orders; (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Postpetition Collateral; and (c) to assess, charge, collect, advance, deduct and receive payments with respect to the Obligations, including, without limitation, interest, fees, costs and expenses permitted under the Regions DIP Credit Agreement, and apply such payments to the obligations pursuant to the Regions DIP Credit Agreement and the Interim and Permanent Financing Orders.

46.     Stay modifications of this type are customary features of postpetition debtor in possession financing facilities and, in the Debtors' business judgment, are reasonable under the circumstances. Accordingly, the Court should modify the automatic stay to the extent contemplated by the DIP Loan Agreement.

45674/0002-6062119v12

**D.    This Court Should Approve the Notice and Objection Procedures Set Forth in the Interim Financing Order and Schedule the Final Hearing.**

47.     Pursuant to Bankruptcy Rule 4001, this Court should set a date for the Final Hearing to consider the Permanent Financing Order authorizing, on a final basis, the Regions DIP Credit Agreement consistent with the notice and objection procedures set forth in the Interim Financing Order.  The Debtors hereby request that the Court set the date for the Final Hearing within three weeks of the date hereof, and the Debtors believe that the notice procedures set forth in the Interim Financing Order are sufficient.

## NOTICE

48.     Notice of this Motion will be provided to: (i) the Office of the United States Trustee; (ii) the Debtors' thirty (30) largest unsecured creditors; (iii) the counterparties to the Debtors' prepetition financing; and (iv) counsel to the Debtors' postpetition lenders.  In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

## NO PRIOR REQUEST

49.     No previous motion for the relief sought herein has been made to this Court or to any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested in this Motion and (1) enter an Order approving the Regions DIP Credit Agreement, substantially in the form of the proposed Interim Financing Order, (2) after the Final Hearing, enter the Permanent Financing Order approving the Regions DIP Credit Agreement on a final basis substantially in the form that shall be filed with the Court, and (3) grant the Debtors such other and further relief as is just and proper.

45674/0002-6062119v12

Dated:  November 11, 2009                /s/ Gary H. Leibowitz
_____
                                         Irving E. Walker, Esq. (Bar No. 00179)
                                         Gary H. Leibowitz, Esq. (Bar No. 24717)
                                         G. David Dean, Esq. (Bar No. 26987)
                                         Cole, Schotz, Meisel, Forman &
                                         Leonard, P.A.
                                         300 East Lombard Street, Suite 2000
                                         Baltimore, Maryland  21202
                                         410-230-0660
                                         410-230-0667  Facsimile
                                         iwalker@coleschotz.com
                                         gleibowitz@coleschotz.com
                                         ddean@coleschotz.com

                                         Proposed Attorneys for Debtors and
                                         Debtors-in-Possession

45674/0002-6062119v12

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this <u>11th</u> day of November, 2009, copies of the foregoing Debtors' Motion for Entry of Interim and Final Orders Pursuant to Sections 105, 362 and 364 of the Bankruptcy Code and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (A) Authorizing and Approving Postpetition Financing from Regions Bank and Granting Security Interests and Superpriority Administrative Expense Status; (B) Modifying the Automatic Stay Pursuant to Section 362; and (C) Scheduling Interim and Final Hearings Pursuant to Bankruptcy Rule 4001 were sent by overnight delivery or facsimile to the parties identified on the attached service list (except that, for any of the parties identified on the attached service list without a street address or fax number, copies were sent by first-class United States mail, postage prepaid), unless the party has consented to service by electronic means.

<u>/s/ Gary H. Leibowitz</u>
Gary H. Leibowitz

45674/0002-6062119v12

Consolidated Master Service List

ALL SHORE, INC.
751 ELKTON BLVD.
ELKTON MD 21921

AMERICAN RESIDENTIAL SERVICES LLC
9070 EUCLID AVE
MANASSAS VA 20110

ANC PAINTING & MCCORMICK PAINT WORKS
308 S. MAIN ST.
BEL AIR MD 21014

ARCHER EXTERIORS, INC.
341 HARDING HWY
PITTSGROVE NJ 08318-8318

B&F DRYWALL INC
815 LITTLE EGYPT ROAD
ELKTON MD 21921

BB&T BANK
ATTN: GRANT COLLEDGE
6410 HERITAGE
THIRD FLOOR
BOWIE MD 20716

BENFIELD ELECTRIC CO, INC.
400 HICKORY DRIVE
SUITE 200
ABERDEEN MD 21001

BOLLINGER CONSTRUCTION
1 CREAMERY WAY
EMMITTBURG MD 21727

BUILDERS FIRST SOURCE
18 INDUSTRIAL DRIVE
NORTH EAST MD 21901

BUSTAMANTE CONCRETE
P.O. BOX 1035
ABINGTON MD 21009

CHESAPEAKE PLUMBING & HEATING, INC
34913 DELAWARE AVE
FRANKFORD DE 19945

COLUMBIA BANK
ATTN: KEVIN SULLIVAN
7168 COLUMBIA GATEWAY DRIVE
COLUMBIA MD 21046

COMPLETE HOME SVCS INC
5397 AGRO DRIVE
FREDERICK MD 21703

COUNTY BANK
ATTN: JOHN FLOYD
19927 SHUTTLE ROAD
REHOBOTH BEACH DE 19971

D & R CONSTRUCTION CO
12202 GLENBAUER RD
KINGSVILLE MD 21087

D & S DRYWALL, INC.
4705 MADONNA RD.
WHITE HALL MD 21161

D&I LLC
850 ROME COURT
BEL AIR MD 21015

DGO'S CONCRETE, INC
101 BIGMOUNT COURT
ABINGTON MD 22109

DIXIE CONSTRUCTION
260 HOPEWELL ROAD
CHUCHVILLE MD 21028

EAST COST ELECTRIC CO.
824 KIAMENSI ROAD
WILMINGTON DE 19804

EIGHTY-FOUR LUMBER
12400 PULASKI HWY
JOPPA MD 21085

EMC MORTGAGE
PO BOX 141358
IRVING TX 75014

FIFTH THIRD BANK
ATTN: CRAIG HOWARD
707 GRANT STREET
21ST FLOOR
PITTSBURGH PA 15219

FIRST HORIZON CONSTRUCTION LENDING
ATTN: TERRY MILLER
9515 DEERECO ROAD
SUITE 400
TIMONIUM MD 21093

GEBHARDT & SMITH LLP
ATTN: MICHAEL GALLERIZZO
ONE SOUTH STREET
SUITE 2200
BALTIMORE MD 21202

GEMCRAFT HOMES, INC
2205 COMMERCE ROAD
SUITE A
FOREST HILL MD 21050

HALL MECHANICAL & ASSOCIATES, INC.
707 BELAIR AVE.
FRONT ROYAL VA 22630

HARFORD BANK
ATTN: DON YOUNG
505 S. MAIN STREET
BEL AIR MD 21014

INDUSTRIAL LIGHTING HOLDING COMPANY INC
8325 PATUXENT RANGE RD STE E
JESSUP MD 20794

INTERGRITY BANK
ATTN: MIKE ZARCONE
3345 MARKET STREET
CAMP HILL PA 17011

INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATION
P.O. BOX 21126
PHILADELPHIA PA 11914-0326

KEKA CONTRACTORS INC
15 CURLEW COURT
REHOBOTH BEACH DE 19971

M&T BANK
ATTN: KEVIN C. SNELBAKER, AVP
107 WEST MARKET STREET
YORK PA 17401

OFFICE OF THE ATTORNEY GENERAL
ATTN: DOUGLAS F. GANSLER
200 ST. PAUL PLACE
BALTIMORE MD 21202

OFFICE OF THE ATTORNEY GENERAL
ATTN: JOSEPH R BIDEN, III ESQ
CARVEL STATE OFFICE BUILDING
820 N FRENCH ST
WILMINGTON DE 19801-3536

OFFICE OF THE ATTORNEY GENERAL
ATTN: BILL MIMS
900 EAST MAIN STREET
RICHMOND VA 23219

OFFICE OF THE ATTORNEY GENERAL
ATTN: DARRELL V. MCGRAW, JR
STATE CAPITOL COMPLEX,
BLDG. 1, ROOM E-26
CHARLESTON WV 25305

OFFICE OF THE ATTORNEY GENERAL
ATTN: TOM CORBETT
16TH FLOOR, STRAWBERRY SQUARE
HARRISBURG PA 17120

ORRSTOWN BANK
ATTN: PAUL BAYNUM, VP
427 VILLAGE DRIVE
CARLISLE PA 17015

PATAPSCO BANK
ATTN: FRANCIS C. BROCCOLINO
2028 E. JOPPA RD
BALTIMORE MD 21234

PEOPLE'S BANK
ATTN: STEPHEN T. SHERMAN, AVP
CODORUS VALLEY CORPORATE CENTER
105 LEADER HEIGHTS
YORK PA 17405-2887

PNC BANK
ATTN: DAVID KENNEDY
TWO HOPKINS PLAZA
BALTIMORE MD 21201-2930

REDSTEEL HVAC, INC
13945 ROVER MILL ROAD
WEST FRIENDSHIP MD 21794

REGAL BANK
ATTN: JAMIE GRONNING
10123 REISTERTOWN ROAD
OWINGS MILLS MD 21117

REGIONS BANK
ATTN: KEVIN BARRON
ONE GLENDALE PARKWAY
SUITE 400
ATLANTA GA 30328

REICO
6790 COMMERCIAL DRIVE
SPRINGFIELD VA 22151

RIDGE PLUMBING & AIR
125 INDUSTRY LANE
FOREST HILL MD 21050

S & L PLUMBING INC.
P.O. BOX 546
RISING SUN MD 21911

SECURITIES & EXCHANGE COMMISSION
ATTN: BANKRUPTCY UNIT
15TH & PENNSLYVANIA AVE., NW
WASHINGTON DC 20020

SECURITIES AND EXCHANGE COMMISSION
ATTN: DANIEL M. HAWKE, REGIONAL DIRECTOR
THE MELLON INDEPENDENCE CENTER
701 MARKET STREET
PHILADELPHIA PA 19106-1532

SHAWN PYLE & DIANE DIXON
260 HOPEWELL ROAD
CHURCHVILLE MD 21028

SLAVIE BANK
ATTN: TIM NICHOLS
1614 CHURCHVILLE ROAD
BEL AIR MD 21015

SMART ENERGY SYSTEMS INC.
1300 ENTERPRISE COURT
SUITE 105
BEL AIR MD 21014

SOUTHERN ELECTRICAL SERVICE CO INC
103 SYCOLIN ROAD S E
LEEBURG VA 20175

SPARTAN ENTERPRISES INC
10097 TYLER PLACE #9
IJAMSVILLE MD 21754

STONEBRIDGE BANK
ATTN: SANDRA G. KEGGINS, SVP
2217 COMMERCE RD # 1
FOREST HILL MD 21050

T & D PAVING, INC.
1940 E. MOUNT HOPE RD
MANHEIM PA 17545

THE GARDEN CITY GROUP, INC.
ATTN: BRIAN KARPUK
190 S. LASALLE STREET
SUITE 1520
CHCIAGO IL 60603

THE L&L COMPANY
8500 PHOENIX DRIVE
MANASSAS VA 20110

U.S. ENVIRONMENTAL PROTECTION AGENCY
MID-ATLANTIC REGIONAL OFFICE (REGION 3)
1650 ARCH ST.
PHILADELPHIA PA 19103-2029

US ATTORNEY'S OFFICE
ATTN: ROD J. ROSENSTEIN
36 S. CHARLES STREET
4TH FLOOR
BALTIMORE MD 21201

WYATT, LLC
7 CHESAPEAKE LANDING
ANNAPLIS MD 21403

WACHOVIA
ATTN: RON SANDERS
1753 PINNACLE DRIVE
MCLEAN VA 22102